UNITED STATES

v.

**Airman First Class Ted A. PETERS, Jr., FR 423–82–0890 United States Air Force.**

**ACM 23114.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 30 Jan. 1981.

Decided 28 Aug. 1981.

---

Appellate Counsel for the Accused: Mr. William L. Ducker, Purvis, Mississippi. Colonel George R. Stevens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter.

Before EARLY, MILES and KASTL, Appellate Military Judges.

## DECISION

MILES, Senior Judge:

Contrary to his pleas, the accused was convicted of wrongful possession of lysergic acid diethylamide, librium, valium and marijuana in violation of Articles 92 and 134, 10 U.S.C.A. §§ 892 and 934, Uniform Code of Military Justice. The approved sentence extends to a dishonorable discharge, confinement at hard labor for twenty months, total forfeitures and reduction to airman basic.

Appellate defense counsel contend that a search of the accused's on-base quarters, though authorized by the base commander, was unlawful. We agree. We find the use of a marijuana detection dog at the accused's on-base quarters, under the facts of this case, to be a search, in and of itself, and unreasonable as a warrantless search. The marijuana dog's alert could not support the probable cause necessary for the subsequently issued warrant. Therefore, since the only evidence to support the charges was the fruit of an illegal search, we set aside the findings of guilty and dismiss the charges and specifications.

This issue arose on these facts: At approximately 8:30 in the evening, the accused and his wife were stopped while driving their car onto the Air Force base where they lived. Their car was searched as a part of a random gate inspection. A marijuana detection dog, "Valdez," assisted in

the search. During the search, a bag of suspected marijuana was discovered in the car's glove compartment. A quantity of unknown pills and suspected marijuana were also found after a strip search of the accused's wife. Thereafter, the security policeman who apprehended the accused at the gate, Sergeant Steve A. Scott, accompanied by "Valdez," went to the accused's on-base quarters; the accused and his wife remained at the security police station. No judicial authorization or consent was obtained for this visit to the quarters. The record suggests no reason to believe there was any contraband in the quarters, other than an apparent "hunch" on the part of Sergeant Scott. Clearly, the record shows the purpose of Sergeant Scott's visit was to attempt to discover additional evidence to justify a search of the accused's on-base residence.

At the accused's house, Sergeant Scott walked "Valdez" past all of the doors and windows of the duplex quarters assigned to the accused. The dog alerted at a front window of the residence. At the time of the alert, "Valdez's" hind feet were on the ground in the yard and his front paws were on the window sill. The window was open approximately one half inch to one inch. After the marijuana dog alerted, Sergeant Scott contacted the base commander, who authorized a search of the quarters based on both the suspected marijuana found in the accused's car and "Valdez's" alert at the quarters. The accused was then brought to his house, and a search followed. The search resulted in the seizure of approximately 112 grams of marijuana and other drugs which formed the basis of the offenses of which the accused was convicted.[1]

At trial, the defense contended that Sergeant Scott's actions in taking the dog to the house and then checking all the doors and windows represented a warrantless search without probable cause. The military judge denied a defense motion to suppress, ruling that use of the marijuana dog was not a search because occupants of mili-

---

1. In special findings, the military judge declared that the finding of guilt, as to marijuana, was based solely on the marijuana seized from the accused's quarters.

tary family housing have no reasonable expectations of privacy in the grounds outside of their assigned quarters.

The precise issue raised by appellate defense counsel concerns the lawfulness of Sergeant Scott's action with the marijuana dog at accused's quarters prior to the search thereof. We agree that is the crucial question. If Sergeant Scott's activities constituted an improper search, thereby infringing on the accused's constitutional rights, then the subsequent authorization and search must fail and the accused's conviction must be set aside.

At the outset, we reject the trial court's sweeping determination that occupants of family housing have *no* expectation of privacy in the grounds immediately adjacent to their premises even if police and others stand in their yards and peer into their living room or bedroom windows. Any other holding would be inconsistent with the broad scope of the Fourth Amendment.[2]

"At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505 at 511, 81 S.Ct. 679 at 682, 5 L.Ed.2d 734 (1961). The land immediately adjacent to the home is also entitled to protections against unreasonable search and seizure as well as the home itself. *United States v. Anderson*, 552 F.2d 1296 (8th Cir. 1977); *Brock v. United States*, 223 F.2d 681 (5th Cir. 1955). As a United States Court of Appeals noted:

> The sacredness of a person's home and the right of personal privacy and individuality are paramount considerations of our country and are specifically protected by the Fourth Amendment. The Fourth Amendment's protection, however, extends further than just the walls of the

physical structure of the home itself. The area immediately surrounding and closely related to the dwelling is also entitled to the Fourth Amendment's protection. *Fixel v. Wainwright*, 492 F.2d 480, at 483 (5th Cir. 1974).

█ We believe the foregoing principle is equally applicable to occupants of military family housing. *Cf. United States v. Stuckey*, 10 M.J. 347 (C.M.A.1981). Of course, in the application of Fourth Amendment protections to members of the armed forces, exigencies of military necessity and unique conditions that may exist in military society must be taken into account. *United States v. Middleton*, 10 M.J. 123 (C.M.A. 1981). Because of the nature of military society, the expectations of privacy in the military are considerably different from what might be expected in a civilian community. *United States v. Lewis*, 11 M.J. 188 (C.M.A.1981); *United States v. Middleton, supra*; Mil.R.Evid. 313, 314.

Our finding that personnel residing in military family housing have expectations of privacy—at least against the uninvited eye, ear or nose at their windows—does not necessarily resolve this case however.

█ In establishing the constitutional expectation of privacy as a standard in applying the Fourth Amendment, Justice Stewart of the United States Supreme Court points out:

> In the first place, the correct solution to Fourth Amendment problems is not necessarily promoted by incantation of the phrase "constitutionally protected area." Secondly, the Fourth Amendment can not be translated into a general "constitutional right to privacy."
>
> \* \* \* \* \* \*
>
> What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [Citations omitted]
>
> *Katz v. United States*, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

---

2. However, the trial court was correct in so far as the yard and grounds themselves are concerned or what is readily observable from public areas. *See Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Burnside*, 35 C.M.R. 298, 15 U.S.C.M.A. 326 (1965).

As the Supreme Court observed,

For the Fourth Amendment protects people not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.

*Katz v. United States*, 389 U.S. 347, 350, 351, 88 S.Ct. 507, 510, 511, 19 L.Ed.2d 576 (1967).

Concededly, in a variety of situations, the use of marijuana dogs has been upheld against claims of an intrusion on Fourth Amendment rights when they are otherwise in a place where they have a right to be.[3] *United States v. Solis*, 536 F.2d 880 (9th Cir. 1976); *United States v. Fulero*, 498 F.2d 748 (D.C.Cir. 1974); *United States v. Grosskreutz*, 5 M.J. 344 (C.M.A.1978); Annot., 31 A.L.R.Fed. 931 (1977). However, a marijuana dog, as an extension of the olfactory senses of a police officer, cannot go where his trainer cannot go. *See United States v. Bronstein*, 521 F.2d 459 (2nd Cir. 1975); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

■ Under the facts of this case, we conclude that Sergeant Scott's use of the marijuana dog at the accused's quarters was done in a manner which constituted a search. The dog was taken through the yard and allowed to sniff at all the windows and doors, thereby invading reasonable expectations of privacy. The fact that the window was slightly open was not an invitation to the police to trespass. The accused's yard was not a public walkway or a common area but rather a specific yard, closely associated with the house, for which the accused had the responsibility for care and maintenance. Hence, "Valdez" and his handler, while standing in the yard and sniffing at the accused's windows, were not in any place where they otherwise had a right to be. In short, they were in the same position as trespassers. *See Hobson v. United States*, 226 F.2d 890 (8th Cir. 1955); *Brock v. United States, supra.* As such, they intruded into reasonable expectations

of privacy present in military society. *See Katz v. United States* and *United States v. Stuckey*, both *supra*.

Having concluded that the actions of Sergeant Scott and "Valdez" constituted a search, we further conclude it was unreasonable under Fourth Amendment standards, having been conducted without a warrant and without probable cause.

When Sergeant Scott went to the accused's quarters, he was clearly involved in a criminal investigation focused on the accused. But there were no specific and articulable facts leading to a reasonable suspicion as to the presence of contraband in the quarters. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 889 (1968). The accused was not previously involved with illegal drugs nor does the record reflect the accused said anything at that stage to create a suspicion of contraband in the quarters. In short, there was no probable cause to believe illegal drugs were in the quarters. *United States v. Racz*, 44 C.M.R. 78, 21 U.S.C.M.A. 24 (1971). Absent applicable exceptions to the warrant requirement, "a search is *per se* unreasonable, and thus violates the Fourth Amendment, if the police making the search have not first secured a warrant that satisfies the terms of the Warrant Clause of the Fourth Amendment. *Robbins v. California*, —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981).

Nor do we find the actions of the police otherwise reasonable so as to justify this invasion of Fourth Amendment protections. Clearly, the actions of "Valdez" and Sergeant Scott at the accused's quarters were not a search incident to an arrest at the gate, *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), nor based on exigent circumstances requiring immediate action. In fact, none of the possible justifications for warrantless searches was involved in this case. See Mil.R.Evid. 313, 314, 315(g).

---

**3.** For example, the use of marijuana detection dogs as an aid in inspections or in parking lots, public walkways, common hallways, common areas of barracks or family housing area or similar places on military installations where there is no reasonable expectation of privacy are fully legitimate even absent authorization or probable cause. *See United States v. Middleton*, 10 M.J. 123 (C.M.A.1981); *United States v. Grosskreutz*, 5 M.J. 344 (C.M.A.1978).

Since the acts in question constituted an unreasonable search without any authorization from the commander and without probable cause, the subsequent warrant which was based thereon was improperly issued. All fruits of this subsequent search were inadmissible. Since there is no other evidence to sustain the findings of guilty, they are set aside and the charges and specifications are dismissed.

EARLY, Chief Judge and KASTL, Judge, concur.