UNITED STATES

v.

**Sergeant Robert L. GUILLEN FR 551–27–4372 United States Air Force.**

**ACM S25519.**

U. S. Air Force Court of Military Review.

27 July 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter, Colonel Kenneth R. Rengert and Major Michael J. Hoover.

Before HODGSON, C. J., and POWELL, and MILLER, Appellate Military Judges.

## DECISION

MILLER, Judge:

The accused was convicted, contrary to his pleas, of four possessions of marijuana and one possession of marijuana paraphernalia on a single day in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934, 892. His approved sentence consists of a bad conduct discharge, confinement at hard labor for three months, and reduction to the grade of airman basic.

On the evening of 15 September 1981, security police conducting a random vehicle inspection, discovered an individual in possession of marijuana. A short time later, in response to questioning, this individual told an agent of the Air Force Office of Special Investigations (OSI) that the accused had a half-pound of marijuana in his quarters. Since the individual refused to tell the agent how he had obtained this information and was of questionable reliability, OSI attempted to verify the information he provided by requesting that the security police run a marijuana dog up to the accused's quarters the following morning.

The set of quarters occupied by the accused was located in a one-story, multi-family horseshoe shaped building. Doors from each unit opened into the middle of the horseshoe, creating a courtyard-like illusion. A walkway led into the courtyard from a parking lot at the open end of the courtyard. It in turn was accessed by a road paralleling that opening. This walkway led along one side of the courtyard and across its bottom, passing by the doors to other quarters and dead-ending at the accused's doorstep. Individual mailboxes for each set of quarters in the building were accessed by this walkway and no fences of any kind were located inside the courtyard area. The street numbers assigned to each set of quarters were posted on the other sides of the building, the sides facing out from the center of the horseshoe. The outer side of the accused's unit, located along the bottom of the horseshoe, faced a sidewalk and street paralleling the outer wall of his quarters. On this side of his unit, the accused had a door which opened on to a fenced patio. The patio, in turn, was accessed by a walkway leading from the sidewalk, just described, to a gate located in the fence that surrounded it.

At approximately 1130 hours on the morning of 16 September, a security police dog handler took his marijuana dog up the courtyard walkway to the accused's doorstep. The dog alerted at the doorstep and its handler immediately reported this fact to OSI agents stationed in the building's vicinity.

The base commander was then informed, under oath, of both the dog's alert and the allegation pertaining to the accused's possession of marijuana that OSI had obtained the previous evening. He issued a search authorization and, pursuant to it, nearly a half pound of marijuana was confiscated.

Defense, citing *United States v. Peters*, 11 M.J. 901 (A.F.C.M.R.1981), assert that the use of the marijuana dog in this case violated the legitimate expectations of privacy possessed by residents of multi-family base quarters. We disagree.

*Peters, supra.*, did not, as defense suggests, provide any sweeping guidance as to boundaries around types of on-base residences wherein occupants of such residences are always entitled to an inviolate expectation of privacy. Rather, it simply analyzed a particular set of facts in light of judicial

principles upon which an individual's entitlement to privacy at any given time in any given place must be determined.

There, a random vehicle search conducted at the base's main gate resulted in Peters' apprehension for possession of marijuana. For no apparent reason, the apprehending security police, while maintaining the accused in custody at the security police desk, immediately sent a dog and its handler to skulk around in the dark outside the accused's single family quarters, proceeding from window to window around the outside wall of the accused's house. Apparently, even shrubbery was to be ignored. Based upon these facts, we described the dog handler and his dog as "in the same position as trespassers," concluding that such police conduct amounted to a search of the house conducted in an area where the dog and its handler had no right to be.

In the case at bar, OSI was attempting to substantiate a criminal allegation that the accused possessed one-half pound of marijuana in his quarters. Certainly, under these circumstances, there could be no question as to the official propriety of the dog handler's broad daylight visit to the accused's door. No question of "harrassment" existed. The dog handler remained on the only walkway leading from a parking lot, adjoining the multi-family building in which the accused lived, to the single door that entered his unit from that side of the building, and no signs or fences designed to discourage solicitors or any other member of the public from utilizing this walkway were present.

Contrary to defense's reading of *Peters, supra*, we agree with the Eighth Circuit Court of Appeals when it says:

> The standard for determining when the search of an area surrounding a residence violates fourth amendment guarantees no longer depends on outmoded property concepts, but whether the defendant has a legitimate expectation of privacy in that area.
>
> \*   \*   \*   \*   \*   \*

We have in some instances found such expectations reasonable with regard to property located out of public view on a defendant's land. However, a driveway and portion of the yard immediately adjacent to the front door of the residence can hardly be considered out of public view. See W. LaFave, Search & Seizure, Section 2.3 (1978). [Case citations omitted.]

*United States v. Ventling*, 678 F.2d 63, 66 (8th Cir. 1982). *See, also, Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *United States v. Humphries*, 636 F.2d 1172, (9th Cir. 1980), *United States v. Bernard Industries, Inc.*, 589 F.2d 1353 (8th Cir. 1979), *United States v. Hensel*, 509 F.Supp. 1376 (D.C.Me.1981), *United States v. Myers*, 13 M.J. 951 (A.F.C.M.R.1982) (Miller, J., (concurring in result)), and *United States v. Perguson*, 13 M.J. 955 (A.F.C.M.R.1982).

Even prior to the Supreme Court's ruling in *Rakas, supra.*, the Ninth Circuit Court of Appeals had recognized that:

> It would be equally unwise to hold, as a matter of law, that all driveways are protected by the Fourth Amendment from all penetrations by police officers as to hold that no driveway is ever protected from police incursions. The test in each case should be that of reasonableness, both of the possessor's expectations of privacy and of the officers' reasons for being on the driveway.

*United States v. Magana*, 512 F.2d 1169, 1171 (9th Cir. 1975).

And, other courts had ruled:

> [P]olice with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public. Thus, police may walk on the sidewalk and onto the porch of a house and knock on the door if they are conducting an investigation and want to question the owner and in such a situation the police are free to keep their eyes open and use their other senses. *Ellison v. United States*, 93 U.S.App.D.C. 1, 3, 206 F.2d 476, 478 (1953), relied upon in *State v. Buchwald*, 293 Minn. 74, 80, 196 N.W.2d 445, 449 (1972).

*State v. Crea*, 305 Minn. 342, 233 N.W.2d 736, 739 (1975). *See, also, United States v. Sherriff*, 546 F.2d 604 (5th Cir. 1977), *United States v. Magana, supra, United States v. Langley*, 466 F.2d 27 (6th Cir. 1972), *State v. Seagull*, 26 Wash.App. 58, 613 P.2d 528 (1980), *State v. Crace*, 26 Or.App. 927, 554 P.2d 628 (1976), and *People v. Maltz*, 14 Cal.App.3d 381, 92 Cal.Rptr. 216 (1971).

It appears objectively unreasonable to us that the accused possessed an expectation of privacy at the only door to his quarters accessed from a parking lot for his quarters, adjacent to a public thoroughfare, particularly, when the only mailbox for his quarters was located in the vicinity of that door. Under such circumstances, even if he were the sole owner of a private off-base dwelling, he would impliedly invite any member of the general public to utilize the walkway to the door in visiting him for any legitimate purpose.

Even under pre-*Rakas* law, the fact that the dog and its handler were on the walkway conducting an official investigation at the time the dog alerted, legitimated their presence at the door, and consequently did not violate the accused's reasonable expectation of privacy.

We conclude that, under the facts of this case, the dog's alert at the door to the accused's quarters did not violate any expectations of privacy recognized by the Fourth Amendment; thus, the base commander's consideration of it as a factor in making his probable cause determination to issue a search authorization was proper.

We finally note that we agree with defense's assertion that Specifications 2, 3, and 4 of Charge I are multiplicious with Specification 1 of that Charge.

Having examined the entire record of trial, each assignment of error, and the government's responses thereto, we dismiss Specifications 2, 3, and 4 of Charge I. As the military judge treated these three Specifications as multiplicious for sentencing purposes with Specification 1 of Charge I, however, no extraordinary action in regard to the sentence is necessary. We conclude that the remaining findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed. Accordingly, the remaining findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON concurs.

Senior Judge POWELL, absent.