**UNITED STATES, Appellee,**

v.

**Lee A. ALEXANDER, Sergeant
U.S. Air Force, Appellant.**

No. 66,299.
ACM 28455.

U.S. Court of Military Appeals.

Argued Oct. 3, 1991.

Decided March 6, 1992.

For Appellant: *Captain David D. Jividen* (argued); *Colonel Jeffrey R. Owens* and *Major Ronald A. Gregory* (on brief).

For Appellee: *Captain Thomas E. Wand* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief).

### Opinion of the Court

SULLIVAN, Chief Judge:

Appellant was tried by a general court-martial composed of a military judge sitting alone at Ellsworth Air Force Base, South Dakota, on January 4 and 5, 1990. Contrary to his pleas, he was found guilty of separate specifications alleging possession of marijuana, cocaine, and methamphetamine, as well as use of marijuana and methamphetamine; and one specification alleging introduction of marijuana onto a military installation, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $550 pay per month for 21 months, and reduction to pay grade E-1. The convening authority approved this sentence on March 29, 1990. The Court of Military Review affirmed the findings of guilty, after consolidating the cocaine-and methamphetamine-possession specifications, and the sentence on January 17, 1991. 32 MJ 664.

On June 4, 1991, this Court granted the following issue for review:

WHETHER THE GOVERNMENT FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE INTRUSION INTO THE APPELLANT'S DORMITORY ROOM WAS A LAWFUL INSPECTION UNDER MIL. R.EVID. 313.

We hold that resolution of the granted issue is not dispositive of this appeal and that the challenged evidence was otherwise admissible as fruits of a lawful probable-cause search. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Grosskreutz*, 5 MJ 344 (CMA 1978); *see* Mil.R.Evid. 315, Manual for Courts–Martial, United States, 1984. *See also United States v. Vasquez*, 909 F.2d 235, 237–38 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991).

The Court of Military Review found the following facts which gave rise to the granted issue:

Alexander performed duties with a detached unit of about 50 people at a remote site. On 18 May 1989, the local sheriff advised the unit commander that several unnamed military members had purchased illicit drugs. After determining that he did not have probable cause to order a search, the commander arranged for an inspection by a military working dog (MWD) team from a nearby Air Force base.

The MWD team arrived at the site on 22 May. After displaying their competency for the commander, the team began a walk-through inspection. *While in a common area outside Alexander's room,[1] the dog alerted on the room. The commander was briefed; he found probable cause and orally authorized a search of the room.* The MWD team was used in the subsequent search. A drinking straw was seized from Alexander's dresser. It later tested positive for both cocaine and methamphetamine. Alexander consented to a search of his car, where marijuana was found. He also consented to provide a urine specimen, which tested positive for marijuana.

At trial, the defense moved to suppress all evidence seized in the search of Alexander's room as well as all derivative evidence. The military judge denied the motion, finding the evidentiary items to have been seized as part of a legitimate morale, welfare and readiness inspection.

---

1. Although the facts are not developed in great detail, and are in fact disputed by appellate counsel, we have used our independent factfinding power to find that the MWD team

was in a common area outside the appellant's room at the time of the alert. Article 66(c), UCMJ, 10 USC § 866(c); *United States v. Cole,* 31 MJ 270 (CMA 1990).

32 MJ at 665–66 (emphasis added).

The Court of Military Review concluded that the prosecution had "shown by clear and convincing evidence" "that the primary purpose of the examination" of appellant's room "was a valid inspection." *Id.* at 667. *See* Mil.R.Evid. 313. It further opined:

> Finally, we note an alternate basis for the admission of the evidence.[2] The drug dog alerted while in a common area outside Alexander's room, an area in which the appellant had no cognizable expectation of privacy. The alert provided the commander with probable cause for the subsequent search of the room. *United States v. Middleton,* 10 MJ 123 (CMA 1981); *United States v. Grosskreutz,* 5 MJ 344 (CMA 1978); *United States v. Guillen,* 14 MJ 518 (AFCMR 1982). The trial litigants did not focus on the fact that the search was properly conducted on this independent basis.[3] The commander's probable cause search authorization provides another valid basis for admission of the seized items.

---

[2]. Under Mil.R.Evid. 311(d)(3), the defense may be required to specify the basis for any suppression motion; Mil.R.Evid. 311(e)(3) provides that the government, in response, need only address the specific grounds raised by defense. However, it would be prudent for government counsel to also raise any available alternate basis for the admissibility of the evidence.

[3]. We also note that the commander was the only witness called on the suppression motion. Counsel based much of their arguments on offers of proof; although opposing counsel frequently disagreed with the proffers, no additional evidence was tendered. *See* Mil.R.Evid. 103(a)(2); *United States v. Stubbs,* 23 MJ 188, 195 (CMA 1987). Additionally, three separate oral stipulations were offered, but the appellant's consent was never shown. *See* R.C.M. 811(c). We treat these "stipulations" as mere offers of proof. Counsel must be careful to

establish a proper factual basis for evidentiary rulings.

32 MJ at 667.

In this regard, we note that trial counsel made the following statement at trial before the military judge denied appellant's suppression motion:

MJ: As I recall, at the conclusion of yesterday's activities, Captain Riegler, you made three motions for consideration by this court and counsel for both sides argued those motions. Before accepting the accused's pleas it is appropriate that I make some rulings—

TC: Your honor, before you do that, the government would like to add one thing and we have talked with Captain Riegler about this. *As far as the search of the accused's room, after the dog alerted on various rooms, the Commander, Lieutenant Colonel Krebs granted verbal probable cause search authority after talking with the military working dog team to search the rooms. We would ask Captain Riegler if he would stipulate to that?*

DC: *Yes, sir.*

MJ: It is my understanding from comments from both counsel yesterday and in some documents presented by the defense that before the dog was sent through the various living quarters, whether they be dormitory or housing units, the dog's competency was displayed to the commander, was that not correct?

DC: I would agree that in the statement of the then Special Agent Thornoc[k] that they did run the dog through a certification by Lieutenant Colonel Krebs.

(Emphasis added.)

---

Our first concern in this case is the scope of the defense counsel's motion for suppression. *See* Mil.R.Evid. 311(d)(3) and (e)(3). The motion states:

|  |  |  |
|---|---|---|
| United States | ) | |
| | ) | MOTION TO SUPPRESS |
| v. | ) | PHYSICAL EVIDENCE |
| | ) | AND MEMORANDUM IN |
| LEE A. ALEXANDER, Sgt, | ) | SUPPORT |
| USAF | ) | |
| Detachment 18, 1st | ) | |
| Electronic Combat Range | ) | |
| Group, Forsyth, Montana | ) | |

## MOTION

NOW COMES the accused, through his counsel, Captain Christopher L. Riegler, and moves the military judge to order that certain evidence in this cause be suppressed for the following reasons:

1. That on 22 May 1989 a search was conducted of the accused's room at Detachment 18, Forsyth, Montana.

2. That a military working dog was used for the search. Further, that at the time of the search, suspected marijuana and suspected cocaine or methamphetamine was seized.

3. That the search was conducted by the order of the commander of the detachment by letter dated 22 May 1989.

4. That the search was conducted after the commander was briefed that marijuana had been delivered to unidentified members of his command by the local sheriff. The detachment consists of about 60 Air Force members.

5. That the search was not an inspection as defined by MRE 313 and was a subterfuge to obtain evidence to use against a military member.

WHEREFORE, the accused respectfully requests that all evidence seized in the search, and all information resulting from the search, be suppressed.

(Emphasis added.)

---

■ The thrust of the above suppression motion was that the entry and search of appellant's dormitory room was authorized by the commander's inspection letter of May 22, 1989. (*See* appendix.) He asserts that, since this inspection order was not issued in accordance with Mil.R.Evid. 313, the resulting search and seizure were unlawful, and evidence produced therefrom was inadmissible. Mil.R.Evid. 311(a).* However, appellant has not responded at trial, before the Court of Military Review, or before this Court to the Government's alternative probable cause-verbal search authorization argument. *See generally* Mil.R.Evid. 315. While we stop short of considering this defense inactivity a concession, we cannot ignore this issue as raised by the Government and must address it in assessing admissibility of the challenged evidence. Mil.R.Evid. 311(c)(1). *See United States v. McBean,* 861 F.2d 1570 (11th Cir.1988). *Cf. United States v. Lott,* 870 F.2d 778, 781–82 (1st Cir.1989); *United States v. Curzi,* 867 F.2d 36, 44 (1st Cir. 1989); *United States v. Salazar,* 805 F.2d

* We do not reach this question today. *See generally United States v. Thatcher,* 28 MJ 20 (CMA 1989).

1394, 1399 (9th Cir.1986). *See generally* 4 W. LaFave, *Search and Seizure* § 11.7(d) at 521 (2d ed. 1987).

■ Turning to the record of trial, we note that defense counsel agreed to the stipulation proposed by trial counsel concerning the canine alert outside appellant's dormitory room and the commander's subsequent verbal authorization to search. *See generally* RCM 811, Manual, *supra.* Admittedly, appellant did not express his assent to this stipulation, and the military judge did not expressly accept it. However, this stipulation was offered on the pretrial question of admissibility of evidence and thus these unobjected-to omissions did not preclude consideration of this stipulation. *See* Mil.R.Evid. 104(a). Accordingly, the question before us is whether this record supports admission of the challenged evidence as fruits of a probable-cause search. *See* Mil.R.Evid. 315.

■ We first note that the Supreme Court has made it quite clear that a "canine sniff" by a well-trained-narcotics-detection dog in a public place is not a search within the meaning of the Fourth Amendment. This holding occurred in a case where the odors alerted on by the dog emanated from an item of luggage in which the defendant maintained a reasonable expectation of privacy. *United States v. Place*, 462 U.S. at 707, 103 S.Ct. at 2644–45. *See generally* 1 W. LaFave, *Search and Seizure* § 2.2(f) (2d ed. 1987). However, the Supreme Court did not condone indiscriminate intrusion of a drug-detection dog into an area in which a person has a reasonable expectation of privacy to discover such scents. *See United States v. Whitehead*, 849 F.2d 849, 857–58 (4th Cir.), *cert. denied*, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988). *Cf. United States v. Stone*, 866 F.2d 359 (10th Cir.1989).

■ In addition, concern has been expressed by at least one federal court of appeals where drug-detection dogs were deployed outside a suspect's apartment but, nevertheless, in a public place. *See United States v. Thomas*, 757 F.2d 1359 (2d Cir.1985). The majority rule, however, is that where the canine "sniff 'd[id] not expose noncontraband items that otherwise would remain hidden from view,' and was not conducted in a manner or location that subjected appellant 'to the embarrassment and inconvenience entailed in less discriminate and more intensive investigative methods', ... the *Place* enunciated rule governs, and, thus, no search occurred." *United States v. Colyer*, 878 F.2d 469, 477 (D.C.Cir.1989), quoting *United States v. Place*, 462 U.S. at 707, 103 S.Ct. at 2644–45. *See United States v. Rodriguez–Morales*, 929 F.2d 780, 788–89 (1st Cir.1991); *United States v. Morales–Zamora*, 914 F.2d 200, 203–05 (10th Cir.1990); *United States v. Vasquez*, 909 F.2d at 237–38. We agree and hold that use of the drug-detection dog in a common area outside a servicemember's room is not a search for Fourth Amendment purposes. *See generally United States v. Battles*, 25 MJ 58 (CMA 1987).

■ The question thus becomes whether appellant's commander had probable cause after the dog alert to order the drug-detection team into appellant's dormitory room to search for and seize the cocaine-laced straw on his dresser. *See United States v. Stone*, 866 F.2d at 363. We note that the commander had previously received a tip from the local civilian police as to the purchase of drugs by members of his command. Also, he knew that drug-detection dogs were reliable as previously demonstrated to him. These three factors together constituted more than adequate probable cause to permit the commander to order the entire room to be searched. *United States v. Cunningham*, 11 MJ 242, 246 (CMA 1981); *United States v. Middleton*, 10 MJ 123 (CMA 1981); *United States v. Grosskreutz*, 5 MJ 344. *See also United States v. Rodriguez–Morales, supra* at 789; *United States v. Morales–Zamora, supra* at 205; *United States v. Colyer, supra* at 483. Accordingly, admission of the challenged evidence was proper.

The decision of the United States Air Force Court of Military Review is affirmed.

Senior Judge EVERETT concurs.

Judges CRAWFORD, GIERKE, and WISS did not participate.

## APPENDIX

**DEPARTMENT OF THE AIR FORCE**
DETACHMENT 18, 1ST COMBAT EVALUATION GROUP (SAC)
FORSYTH, MONTANA 59327-5026

REPLY TO
ATTN. OF: CC

22 May 89

SUBJECT: Search of Government Owned Facilities

TO: Whom it may concern

1. Based on information received from the Rosebud County Sheriff Department concerning the alleged drug use by military members assigned, I have requested the use of the Malmstrom AFB Military Drug Detection dog for the purpose of a general search for drugs throughout the UEPH facility, UNCOQ facilities and the Military Family Housing Units to include vehicles within the boundary of the Forsyth Housing area. I know that this may be an inconvenience for some, but these allegations must be proved or denied based on fact to uphold the Morale, Welfare and Readiness of the Military personnel assigned at Detachment 18 and to uphold our image in the community.

2. MSgt Philip R. Nickisch, Detachment 18 First Sergeant, will be leading a team of two Security Police personnel and their Drug Detection dog throughout the areas mentioned above until such time as all areas have been satisfactorily cleared by the team. Your cooperation will be greatly appreciated.

3. Any questions that may arise can be directed to MSgt Nickisch or myself.

ALVIN E. KREBS, Jr., Lt Col, USAF
Commander

1A-.5

*Peace . . . . is our Profession*

COX, Judge (concurring in the result):

Because the seizure of evidence in this case was litigated at trial on the basis of military inspection and not probable cause, and since, as the Court of Military Review notes, "the facts [of probable cause] are not developed in great detail," ** I prefer to analyze the seizure in terms of inspection.

Due to the critical and unique nature of the military mission, inspections of many sorts are reasonable under the Fourth Amendment and are everyday facts of military life. *United States v. Bickel*, 30 MJ 277 (CMA 1990); *Murray v. Haldeman*, 16 MJ 74 (CMA 1983); *United States v. Middleton*, 10 MJ 123 (CMA 1981). The reasons for inspections are well stated in Mil. R.Evid. 313(b), Manual for Courts–Martial, United States, 1984:

> An "inspection" is ... conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle....

In other words, inspections are conducted to assure that the mission can be accomplished.

In a sense, commanders "inspect" their subordinates whenever they seek to ensure that they are physically fit, skilled in the performance of their duties, and properly equipped. For example, mental and physical examinations constitute human-asset inspections just as much as job performance tests, "full field layouts," and marksmanship trials. Indeed, virtually anything done to evaluate the fighting effectiveness or preparedness of a unit, or an individual, is an inspection for mission preparedness, whether traditionally so named or not.

By the same token, any threat to combat effectiveness or mission preparedness provides a legitimate basis for inspection. Thus, if a commander has an indication that a dangerous biological agent is present on the installation, his duty to discover and neutralize it entails more than humanitarianism: Obviously the commander cannot fulfill his mission if his people are sick or dead. A quantity of unauthorized explosives at large on the installation provides the same threat to personnel and mission. *See United States v. Brown*, 12 MJ 420 (CMA 1982). A quantity of illegal drugs has the identical effect. *Murray v. Haldeman, supra* at 78, citing *United States v. Williams*, 8 USCMA 325, 327, 24 CMR 135, 137 (1957) ("This Court has long recognized 'the disastrous effects occasioned by the wrongful use of narcotics on the health, morale and fitness for duty of persons in the armed forces.' ")

In my view, any time a commander's probing actions relate directly to the ability of an individual or organization to perform the military mission—as they clearly do here—we have a presumptively valid military inspection. It does not matter whether the commander has reason to suspect that the individual or unit will fail the inspection.

Thus, if the commander hears that Private W.T. Cox III has been selling his TA–50 gear in town, he should be able to in-

---

** 32 MJ 664, 666 n. 1 (1991). Indeed, I can find no evidence of record which supports the Court of Military Review's conclusion that the dog's alert occurred in the hallway, as opposed to in the room. Certainly as to family housing (where the dogs were run through all quarters—kitchens, living rooms, bedrooms, etc.), there was no claim that the handlers entered only those quarters on which the dogs alerted outside the premises and then only upon further specific command authorization. I am somewhat skeptical that a less intrusive policy was employed in the barracks, and nothing in this record suggests that it was. ["*While the MWD team was inspecting Sgt Alexander's room,* MWD 'Robby' alerted to the presence of illegal narcotics *near Sgt Alexander's dresser."* (Emphasis added.)] ["We went *through* all quarters—my quarters included." (Emphasis added.)] ["We went *through* each bedroom, kitchens, the whole bit." (Emphasis added.)] [(Oral stipulation between trial and defense counsel only): "As far as the search of the accused's room, after the dog alerted *on* various rooms, the Commander, Lieutenant Colonel Krebs, granted verbal probable cause search authority after talking with the military working dog team to search the rooms." (Emphasis added.)]

spect Cox to be certain he has his field equipment and is ready for combat. If the commander hears that Cox is sick or on drugs, he should be able to have Cox evaluated—including blood or urine testing—to ascertain Cox's fitness for duty. If the commander hears there is a dangerous substance on his installation, he should be able to go after it to protect the safety and readiness of his personnel. What distinguishes an inspection from a search for the fruits of or evidence of crime is the nexus to the military mission. As long as the action relates to mission security, it should be considered an inspection.

That makes this case easy to decide under Mil.R.Evid. 313. This commander had two types of information. He was told by a local civilian law enforcement official that a number of his servicemembers were regular drug users in town. Indeed, the numbers given represented more than $\frac{1}{10}$th of the installation staff. In addition, the commander was told that a drug purchase had recently occurred on the installation. In light of this tip—which no one contends

amounted to probable cause—the commander acted to neutralize the threat to his personnel and mission. In my opinion, he would have been derelict if he had not. That in itself makes the action reasonable under the Fourth Amendment, in my view. *United States v. Morris*, 28 MJ 8, 18 (Cox, J., concurring in part and dissenting in part).

As indicated, the presence of a quantity of drugs on a military installation is utterly inimical to accomplishment of the mission. This case is particularly illustrative. Appellant's unit, in peace time, scored bombers of the Strategic Air Command on their bombing accuracy. (Surely, after Operation Desert Storm, everybody understands the significance of bombing accuracy.) The unit's wartime mission, of course, was strictly classified. Thus, ridding the installation of drugs was *directly* tied to mission performance; hence, in my opinion, the action here should qualify as an inspection.

For this reason, I concur in the result.