**UNITED STATES of America**

v.

**Steve POND and David G. Fanelli.**

**No. 73 Cr. 1145.**

United States District Court,
S. D. New York.

Sept. 30, 1974.

---

MEMORANDUM OPINION

PIERCE, District Judge.

The defendants herein have been charged in a two count indictment with conspiracy to violate federal narcotics laws and with illegal possession of approximately 77 pounds of marijuana. Pursuant to Rule 41 of the Fed.R.Crim. P. both defendants have moved to suppress the evidence on the ground that it was seized under a defective search warrant. Defendant Pond has also moved to suppress post-arrest statements on various alternative grounds. An evidentiary hearing was held relating to these matters.

A. *Motion to Suppress the Evidence*

It appears that a search warrant was issued by a Magistrate on December 6, 1973 based upon the affidavit of George Sweickert, a Special Agent for the Drug Enforcement Administration (DEA). The affidavit alleged that the affiant had received his information from another agent in California. The California agent had reported that he in turn had received information from an unnamed source to the effect that one Bill Pond had checked for transportation aboard a train at the San Diego Amtrak station a blue-gray suitcase and a footlocker containing a large quantity of marijuana. The informant claimed to have been certain that he had detected the odor of marijuana emanating from the baggage. In addition, the affidavit recited that based on his "past experience, skills and the indicators developed such as the disproportionate ratio of baggage weight to size" the informant had concluded that a large quantity of marijuana was being transported on the train. The informant also relayed a description of defendant Pond, the clothes he was wearing, the numbers of the baggage claims tickets he had received, and the estimated time of arrival of the train in New York City. All this information was contained in the affidavit. In addition, paragraph six of the affida-

Paul J. Curran, U. S. Atty. by Nicholas Figueroa, Asst. U. S. Atty., New York City, for plaintiff.

Joseph J. Zedrosser, New York City, Legal Aid Society, for defendant Pond.

Arthur W. Baily, New York City, for defendant Fanelli.

vit set forth allegations tending to establish the grounds for belief in the sources' reliability. See copy of affidavit below.[1]

On the next day, armed with this search warrant, several DEA agents proceeded to Penn Station where the train was scheduled to arrive. A warrant for Pond's arrest had also been obtained.

Two of the agents stationed themselves in the baggage claim area at Penn Station in New York City where they posed as baggage claim employees. One of these agents executed the warrant by opening the footlocker. The blue-gray suitcase was not opened. Other agents observed Pond as he alighted from the train from San Diego. Pond was met at the station by co-defendant Fanelli and both were followed as they walked together to the baggage claim counter.

Pond was carrying a maroon suitcase with white trim not mentioned in the search warrant. Apparently when Pond reached the baggage claim counter he presented his claim stubs and collected the blue-gray suitcase and the footlocker. Pond and Fanelli then left the train station with Pond carrying the footlocker and Fanelli the two suitcases. Shortly thereafter, they were both arrested. All three items of luggage were then taken to the DEA offices where they were opened. The footlocker proved to contain 19 bricks of marijuana and the maroon and blue-gray suitcases, 12 and 13 bricks of the same substance, respectively. The bricks had each been wrapped in red and brown paper and were also enclosed in plastic material.

Shortly after the hearing commenced the Court ruled that the affidavit in support of the search warrant was legal-

---

1. The supporting affidavit read as follows:

I am a Special Agent of the Federal Drug Enforcement Administration, Department of Justice.

I have been notified by Special Agent ED McCRAVY, D.E.A. of the San Diego office that a reliable source has informed him:

1. That a white male in possession of a large amount of marijuana has boarded AMTRAK Train #40 (The Broadway Limited) at San Diego bound for Penn Station, New York, New York, (via Chicago, Illinois) scheduled to arrive here on Friday, 12-7-73 at 10 a. m.

2. That the marijuana was carried aboard said train in a blue gray suitcase and a foot locker bearing pschedelic (sic) colors or symbols, and weighing approximate 50 and 35 pounds respectively.

3. That said baggage was checked aboard said train at the San Diego Amtrak office on 12-4-73 by a passenger identified as BILL POND.

4. That said Bill Pond is described as white male, approximately 25 years of age, 6'1", weighing approximately 200 pounds, long blond hair, having a beard. At the time of boarding the train he was described as wearing denim pants, green pull-over shirt, brown jacket and moccasin type shoes.

5. That said Bill Pond checked the said two pieces of baggage and was given baggage receipt tags Nos. 977-017 and 977-018 for the footlocker and suitcase respectively.

6. That said source of this information has proven himself reliable in the past based upon approximately-40 cases leading to over 70 arrests and an aggregate recovery of marijuana in excess of 2000 pounds. That said source relies among other things, on an acute sense of smell which has been invariably accurate in the past detection of marijuana in similar circumstances as those at present. That he detected marijuana under similar circumstances about five weeks ago, and that among his many instances of detection there was one seizure of over 120 pounds of marijuana at Penn Station, N.Y.C. within the past year that was contained in a foot locker and a suitcase under similar conditions as those here.

7. That the source is certain he has detected the aroma of marijuana emanating from the aforementioned baggage and that based on his past experience, skills and the indicators developed such as a disproportionate ratio of baggage weight to size, he has concluded that a large amount of marijuana is being transported on said train.

8. Additionally your affiant based on his experience has knowledge that San Diego, California, is a convenient transfer point for smugglers of marijuana from Mexico, the border of which is but a short distance from San Diego.

/s/ George Sweikert
Special Agent

ly sufficient on its face to support a finding of probable cause for the issuance of the search warrant. The standards employed in making this ruling were those enunciated by the Supreme Court in the so-called "two-prong" test in Aguilar v. United States, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Under this test an affidavit based solely on the hearsay report of an unindentified informant must disclose the facts on which the informant relied to base his conclusions that the drugs were where he claimed them to be and the circumstances from which it was concluded that the informant was reliable. *Id.* at 114, 84 S.Ct. 1509, 12 L.Ed. 2d 723.

The Sweickert affidavit revealed that the informant had smelled the marijuana and had also used another "indicator", i.e., the disproportionate ratio of baggage weight to size to buttress his conclusion that the baggage contained marijuana. This particular informant was not unknown to the authorities and he had proven his reliability on a number of other occasions in the past. It was averred that the informant had an acute sense of smell which had "been invariably accurate in the past detection of marijuana in similar circumstances" to those in this case. Two specific examples were cited to reaffirm the informant's reliability.

Having read this affidavit "in a commonsense and realistic fashion" United States v. Harris, 403 U.S. 573, 577, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723 (1971) citing United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) this Court concluded that the *Aguilar* requirements had been met.

Faced with this ruling, the defendants' attack necessarily centered on the accuracy of the statements contained in the affidavit. In this regard, this Court was more than liberal in proceeding to a hearing on this issue without requiring the defendants to make an initial showing of the existence of falsehood in the affidavit or other imposition on the Magistrate. United States v. Dunnings,

425 F.2d 836, 840 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970). Be that as it may, it soon appeared early at the hearing that there was at least some minimal basis for the defendants' position. Thus Special Agent McCravy (the California agent) testified that contrary to what the affidavit indicated he had not been told that the informant had partially based his conclusion that there was marijuana in the baggage on the disproportionate ratio of baggage weight to size. Subsequent efforts by the government to offset this testimony were, in this Court's opinion, unsuccessful. A reading of the transcript of the hearing discloses that the discrepancy between this testimony and the allegations in the affidavit was not resolved. Accordingly, I find that there was indeed a misrepresentation in the affidavit and, in the absence of contrary testimony, that the defendants have shown that the informant had not in fact based his report on the disproportionate ratio of baggage weight to size as alleged in the affidavit. However, there has been no evidence that the misrepresentation was intentional. On the contrary, I find that at the most it was negligently made. The other allegations of misrepresentation—concerning the agents' basis for giving credence to the informant's report—the Court finds without merit as not supported by the evidence adduced during the hearing.

Having found a misrepresentation, the issue presented is whether the misrepresentation is of such a character that the search warrant must be invalidated.

In its recent decision in United States v. Gonzalez, 488 F.2d 833, 837–838 (2 Cir. 1973) the Second Circuit discussed the standards to be applied when a discrepancy in a supporting affidavit to a search warrant has been established. The Court noted that three other circuits have held that "when the truthfulness of the facts underlying a warrant has become suspect, the warrant will be set aside and the evidence derived from it suppressed where there is a showing

that the affiant has made a material and knowing misstatement in the affidavit." *Id.* at 837. The Court also took note of other variations on the standard. Thus, under a stricter view, the warrant should be set aside if a material misrepresentation is negligently made. In *Gonzalez* the Court was not constrained to adopt one particular test since it found the misrepresentation to have been non-material and negligently made. Nevertheless, this Court feels that the *Gonzalez* decision points the way to a proper resolution of the question presented here.

The pivotal issue in this case is whether the misrepresentation or the misstatement in the affidavit was "material", that is, whether it was of such a nature that were it not found in the affidavit, no finding of probable cause could be made and the warrant could not have been issued.

██ I find that the affidavit supports a finding of probable cause absent the allegation as to the ratio between the baggage weight and size. In this Court's view, under the circumstances of this case and given the informant's prior experience and record of performance, the sense of smell was sufficient to make the necessary probable cause finding. I therefore find that the misrepresentation was not material.

The defendants have maintained that in this Circuit the rule is that the accurate detection through smell of narcotics or alcohol, without more, is insufficient to support the issuance of a search warrant. This Court does not agree with that reading of the cases.

In Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932) a warrantless search based on the odor of whiskey alone was held invalid. In United States v. Kaplan, 89 F.2d 869 (2d Cir. 1937), an early Second Circuit case dealing with this issue, the Court following *Taylor* held that an arrest without a warrant that was based merely on the smell of whiskey emanating from the defendant's premises was legal-

ly insufficient. However, the Court noted that "the officer could have applied for a warrant which . . . might then have been valid." *Id.* at 871. Subsequent cases such as Cheng Wai v. United States, 125 F.2d 915 (2d Cir. 1942) and United States v. Kronenberg, 134 F.2d 483 (2d Cir. 1943) also dealt with warrantless arrests. However, in these two cases, the Court found that there was more than the sense of smell to give the agents reasonable cause to believe that a crime was being committed. In *Cheng Wai* the defendant was observed making preparations prior to smoking opium and in *Kronenberg* he was seen disposing of a paper bag under suspicious circumstances. In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) the Supreme Court was again faced with the issue. There the officers, having smelled the odor of opium coming from the defendant's hotel room, proceeded to knock on the door and arrest her without a warrant. The Supreme Court held the arrest invalid noting that "[a]t the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a warrant." *Id.* at 13, 68 S.Ct. at 368. The Court went on to say: "If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character." *Id.*

The last Second Circuit case this Court has been able to find dealing with this issue is United States v. Lewis, 392 F.2d 377, cert. denied, 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968). In *Lewis* a search warrant had been issued which in part stated that a "strong mash or alcohol odor" had been detected "from cracks in and around [defendant's] door". *Id.* at 378 n.1. The lower court had upheld the warrant remarking that while it might be the better prac-

tice for the Commissioner to require proof of the affiant's ability to recognize the odor "the detection of odors may be sufficient for the issuance of a warrant." United States v. Lewis, 270 F.Supp. 807, 811 (S.D.N.Y.1967) (Mansfield, J.). The Second Circuit affirmed stating: "While an odor by itself does not justify a search without a warrant, sufficient probable cause for issuance of a search warrant is shown when a sufficiently qualified person smells the distinctive odor of a forbidden substance emanating from the premises of a person previously convicted of an alcohol violation." 392 F.2d at 379 (citations omitted).

■ It seems clear to this Court from these cases that while it is true that the detection of drugs or alcohol odors, without more, will not justify an arrest or a search without a warrant, it may well support the issuance of such a warrant. " '[P]robable cause' which would justify the issuance of a search warrant is much less than the 'probable cause' required to legally arrest without a warrant." Miller v. Sigler, 353 F.2d 424, 427 (8th Cir. 1965), cert. denied, 384 U.S. 980, 86 S.Ct. 1879, 16 L.Ed.2d 690 (1966), relying on Johnson v. United States, supra. The intervention of a judicial officer adds a new dimension to the proceedings. See United States v. Kaplan, 89 F.2d 869, 871 (2d Cir. 1937); United States v. Rellie, 39 F.Supp. 21, 22 (E.D.N.Y.1941).

The defendants' reliance on United States v. Condrick, 73 Cr. 226 (S.D.N.Y., filed Nov. 9, 1973) (Tenney, J.) is misplaced since in that case no warrant was initially issued. What disturbed the Court there was the fact that a warrant was not obtained although the officers had ample time to do so. Such is not the case here.

■ The more troubling issue presented in this case is raised by the fact that the person who detected the odor was not the one who swore to the affidavit. Both Johnson, supra, and Lewis, supra, premised their observa-

tions on the fact that the individual who was to appear or had appeared before the Magistrate had presumably himself smelled the odors. In the instant case the informant relayed the information to the California agent who in turn gave the information to the New York agent who then came before the Magistrate. Clearly, the affidavit was based on hearsay evidence. This, however, is not fatal. As observed in Jones v. United States, 362 U.S. 257, 272, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); "[A]s hearsay alone does not render an affidavit insufficient, the Commissioner need not have required the informants or their affidavits to be produced, . . . so long as there was a substantial basis for crediting the hearsay." In this case such a "substantial basis" would exist if there is some indication that the informant was competent to smell the contraband. And while it would be preferable if the informant appeared before the Magistrate, the realities of these situations, as here, would appear to dictate that this cannot always occur.

■ Mindful of the Second Circuit's admonition that "[o]ne of the best ways to foster increased use of warrants is to give law enforcement officials the assurance that when a warrant is issued in a close case, its validity will be upheld" United States v. Lewis, 392 F.2d at 379, this Court holds that a "substantial basis" was provided to the Magistrate upon which he could independently conclude that the informant was qualified to detect the marijuana aroma. Here, the Magistrate was told that the informant had an acute sense of smell and that he had proven himself reliable under similar circumstances in past cases. He was given two specific instances in which the informant had demonstrated his competence. Given the fact that in this case the informant was about 3,000 miles away and that the train was due to arrive the next day, this Court deems the information given sufficient to support the issuance of the warrant.

■ Much was made during the hearing of the improbability that a person

562

could have smelled the aroma of the marijuana substance given the fact that the bricks were securely wrapped in the manner noted above. The Court considers this issue to be wide of the mark of the critical area of inquiry raised by the motion to suppress. The Court is concerned not with whether the informant could in fact smell the aroma of the marijuana emanating from the baggage in question, but rather with whether the agents had accurately reported to the Magistrate the basis for the informant's conclusion and the reasons for the belief that the informant was reliable. In this Court's judgment, were it to be otherwise, every application for a search warrant based on the observations of an absent informant could lead to a mini-trial concerned with the testimonial capabilities of that individual. This would be an unwelcome and unwarranted development.

The motions to suppress the evidence in the footlocker and the blue-gray suitcase on the ground that the search warrant was invalid are denied.

■ As indicated above the officers also seized and searched a suitcase that was not mentioned in the search warrant. A motion to suppress this evidence has also been made. At the commencement of the hearing the Court denied this motion but upon reflection has reassessed its ruling. While it is true that an item not identified in a search warrant may properly be seized if it is reasonably related to the purpose of the search, I believe that this principle is not applicable here.

■ United States v. Pacelli, 470 F. 2d 67 (2d Cir. 1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973) instructs us that for such a seizure to be valid it must appear that during the course of a lawful search the officer inadvertently came upon other incriminating evidence, contraband, instrumentalities of crime or the like which would be valid objects for seizure and which were reasonably related to the purpose of the search. This is in substance the so-called "plain-view" doctrine. Applying its terms to the situation here, I find as an insurmountable obstacle the hard fact that the contraband here was simply not in plain view. It was contained in a suitcase which might well have contained the personal effects of the defendant or simply some other articles not subject to seizure. While it is true that the circumstances may well have led the officers to suspect that the maroon suitcase also contained contraband, such a suspicion, in this Court's view, is insufficient to support a warrantless search.

Accordingly, I conclude that the contraband seized from the maroon suitcase with white trim must be suppressed.

B. *Other Motions*

Other motions by the defendants to suppress small quantities of marijuana seized from their persons and to suppress post-arrest statements are denied since the record indicates that they are without merit. Pond was given the *Miranda* warnings immediately after his arrest and at least twice again thereafter. Fanelli also received his warnings at the time of his arrest. In this connection the Court notes that the government has indicated that it will not introduce at trial any post-arrest statements, if any, made by Fanelli.

■ The allegations by Pond that he was threatened at the DEA office in that he was told that he was fortunate that he was apprehended by federal rather than state agents since state penalties were much higher the Court finds not to have been threatening. There is no testimony at all in the record to support Pond's further charge that he was told that unless he cooperated he would be turned over to the state authorities. Finally, the bald assertion, unsupported by any other allegations, that the five hour delay in bringing Pond before a Magistrate after his arrest was in and of itself unreasonable is totally unpersuasive. In short, having taken into consideration all the factors enumerated in 18 U.S.C. § 3501 this Court finds that

the post-arrest statements attributed to Pond were voluntarily given.

## C. *Conclusion*

The motions to suppress the evidence contained in the maroon suitcase are granted. Defendants' other motions are denied. The Court notes that the validity of Fanelli's arrest is still an open question. This matter will be inquired into prior to any disposition of the case.

So ordered.