UNITED STATES of America,
Appellee,

v.

Steven POND and David Fanelli,
Appellants.

Nos. 1075, 1117, Dockets 75–1100,
75–1131.

United States Court of Appeals,
Second Circuit.

Argued June 6, 1975.

Decided Aug. 28, 1975.

Certiorari Denied Jan. 12, 1976.
See 96 S.Ct. 794.

spite a negligent misrepresentation by the officer in the underlying affidavit. The officer mistakenly had stated to the issuing magistrate that the informant had noted the unusual weight of the odiferous baggage in arriving at his conclusion that it contained the forbidden herb. We answer these questions affirmatively and hence affirm.

Appellant Pond checked a suitcase and footlocker on an Amtrak train, the "Broadway Limited," from San Diego, California, to New York, New York. The San Diego station agent, Mr. Dunbar, smelled what he believed to be the aroma of marijuana emanating from Pond's luggage. Dunbar had frequently been exposed to marijuana shipments (San Diego being only 17 miles from the Mexican border) and had accurately detected marijuana using his sense of smell as a determining clue in approximately half of 25 to 30 cases in which he had provided information to federal authorities. Dunbar telephoned his discovery, a description of Pond and the latter's baggage, with baggage tag numbers, and New York arrival time to San Diego DEA Agent McCravy, who relayed it to New York DEA Agent Sweikert. Agent Sweikert executed an affidavit relating that in Sweikert's experience San Diego was a convenient point of embarkation for marijuana shipments, setting forth Dunbar's information, and giving details of Dunbar's experience in olfactory detection of marijuana.[1] The affidavit also contained the mistaken assertion that the informant had relied on the "disproportionate ratio of baggage weight to size." A warrant was procured. Pond and his friend, appellant Fanelli, picked up the baggage at the claim counter in New York and were arrested as they left the station with it. Some 44 bricks (77

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society of New York, New York City, on the brief), for appellant Pond.

John D. Jessep, Bridgeport, Conn., for appellant Fanelli.

Michael S. Devorkin, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, Lawrence S. Feld, Asst. U. S. Atty., on the brief), for appellee.

Before SMITH, ANDERSON and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal presents two questions—first, whether an unidentified but reliable informant's detection of marijuana using his sense of smell alone may provide probable cause for the issuance of a search warrant; second, whether the warrant issued in this case is valid de-

---

1. Paragraph Six of the affidavit, based on Mr. Dunbar's information as an unidentified informant, referred to his reliability in "approximately 40 cases leading to over 70 arrests and an aggregate recovery of marijuana in excess of 2,000 pounds." This does not suggest as appellants seem to think that in all of these cases the informant relied upon his sense of smell. In any event, according to Agent McCravy's testimony at the hearing on the motion to suppress, Dunbar in fact had proved reliable in 25 or 30 cases—still an impressive number—and had relied on his sense of smell in about half of these.

pounds) of marijuana were found.[2] Appellants' motions to suppress this evidence were denied by Lawrence W. Pierce, Judge, *United States v. Pond,* 382 F.Supp. 556 (S.D.N.Y.1974). Following preservation of the suppression issues for appeal under the procedure most recently approved in *United States v. Faruolo,* 506 F.2d 490, 491 n.2 (2d Cir. 1974), appellants were convicted in the United States District Court for the Southern District of New York on pleas of guilty to conspiracy to violate the narcotics laws (21 U.S.C. § 841(a)(1), (b)(1)(A) and possession with intent to distribute.

■ Appellants argue that the affidavit was insufficient because the allegations relating to the informant's smelling marijuana were inadequate to establish probable cause.[3] They concede that smell alone may justify issuance of a warrant if the affiant is qualified to know the odor and the odor is distinctive. *United States v. Lewis,* 392 F.2d 377, 378–79 (2d Cir.), *cert. denied,* 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968); *Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948). *See United States v. Bronstein,* 521 F.2d 459, 461–462 (2d Cir. 1975); *United States v. Johnston,* 497 F.2d 397 (9th Cir. 1974). But they argue strenuously that the warrant must fail because the informant was not the affiant here, as in *Lewis, supra,* and a magistrate therefore could not determine the informant's qualifications to know the odor under *Johnson, supra.*

■ We join the district court in rejecting the appellants' contention that where the informer does not appear before the magistrate, his qualification to know the odor of marijuana cannot be evaluated. The magistrate could justifiably conclude from the affidavit that the informant was an experienced smeller of marijuana, with a proven ability to detect that odor even through the walls of suitcases. Although the affidavit here does not specify the number of seizures for which the informant's sense of smell alone was responsible, it does describe one such occasion in detail, and affirms the "invariabl[e]" accuracy of the sense of smell in similar circumstances.[4]

---

**2.** Appellants suggest that they should have been allowed below to determine whether the bricks, wrapped as they were in red paper, covered with plastic and placed in garbage bags covered with talcum powder, could be smelled in a suitcase or foot locker. To commence with, the wrapping and powder precautions betoken a rather strong odor. We agree with Judge Pierce, however, that the question is not whether the informant could in fact smell the marijuana but whether the affidavit was sufficient. It is to be noted that there was a third suitcase also involved in the seizure, but its contents were properly suppressed since it was not identified in the affidavit. *United States v. Pond,* 382 F.Supp. 556, 562 (S.D.N.Y.1974).

**3.** The portions of the affidavit most pertinent to this appeal, Paragraphs Six and Seven, are as follows:

6. That said source of this information has proven himself reliable in the past based upon approximately 40 cases leading to over 70 arrests and an aggregate recovery of marijuana in excess of 2000 pounds. That said source relies among other things, on an acute sense of smell which has been invari-

ably accurate in the past detection of marijuana in similar circumstances as those at present. That he detected marijuana under similar circumstances about five weeks ago, and that among his many instances of detection there was one seizure of over 120 pounds of marijuana at Penn Station, N.Y.C. within the past year that was contained in a foot locker and a suitcase under similar conditions as those here.

7. That the source is certain he has detected the aroma of marijuana emanating from the aforementioned baggage and that based on his past experience, skills and the indicators developed such as a disproportionate ratio of baggage weight to size, he has concluded that a large amount of marijuana is being transported on said train.

The affidavit is set forth in full in Judge Pierce's memorandum opinion, *United States v. Pond,* 382 F.Supp. 556, 558 n.1 (S.D.N.Y. 1974).

**4.** We find no merit to appellants' argument that because the affidavit describes the informant's accuracy of smell in conjunction with other skills of detection, there is insufficient evidence of informant's accuracy using smell

While it would have been preferable, as we stated in *Lewis,* for the informant here to have appeared before the magistrate, we agree that the affidavit disclosed a "substantial basis" for an independent conclusion that the informant was qualified to detect the odor of marijuana. *See United States v. Harris,* 403 U.S. 573, 579–80, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). It cannot be disputed that marijuana has a distinctive pungent odor, *see United States v. Bronstein, supra,* 521 F.2d at 461; *United States v. Blair,* 366 F.Supp. 1036, 1040 (S.D.N.Y.1973), even conceding that it may have been to some extent disguised here, *see* note 2 *supra.* The requirements of *Johnson* and *Lewis* for probable cause based on smell alone have been met.

■ We are equally unimpressed with the contention that the affidavit does not reveal the underlying circumstances upon which the informant based his conclusions, as required by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). As in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), it is reasonable to infer from the face of the affidavit that the information given is based upon the personal knowledge of the informant. The affidavit states that the informant "has detected the aroma of marijuana from the aforementioned baggage and that . . . he has concluded that a large amount of marijuana is being transported . . .." Paragraph Seven of the affidavit, note 3 *supra.* We think that the magistrate could well infer from the affidavit as a whole that the informant was a station agent or baggage master who, having successfully detected marijuana in the past, had checked a train passenger's luggage, in the process smelling it personally, and concluded, correctly as it turned out, that marijuana was present in the suitcases.

■ We concur with the district court that the affidavit established the general reliability of the informant, as further required by *Aguilar, supra.* Indeed, in *United States v. Sultan,* 463 F.2d 1066, 1069 (2d Cir. 1972), a recitation, such as that in Paragraph Six of the affidavit here, *supra* note 3, that the informant previously provided information resulting in arrests and seizures of large quantities of marijuana was alone sufficient to establish the informant's reliability. We find in this case even more ample indicia of the informant's reliability than were present in *Sultan.*

■ Appellants also argue that the affidavit contained a misrepresentation which they argue was knowing (and therefore intentional) as well as material, either of which would support a reversal under *United States v. Gonzales,* 488 F.2d 833 (2d Cir. 1973). *See also United States v. Carmichael,* 489 F.2d 983, 989 (7th Cir. 1973) (en banc) (warrant voided when misstatement recklessly untruthful and material); Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence,* 84 Harv.L.Rev. 825 (1971). The court below found that there was a misrepresentation of disproportionate weight, 382 F.Supp. at 556, even though the affidavit says only that "based on [the informant's] past experience, skills and the indicators developed such as a disproportionate ratio of baggage weight to size," and the smelling of the aroma of marijuana, the informant concluded that a large amount was being transported. A careful magistrate might conceivably have read the "disproportionate weight" phraseology as referring to only an example of an "indicator" not necessarily used here but used by this experienced informant in certain cases. In any event, assuming as the trial court did that there was a misrepresentation, and examining, as appellants would have us do, the totality of circumstances to de-

---

alone. We think that a magistrate would justifiably read the affidavit as establishing accuracy using smell alone. Moreover, even if other "indicators developed" were relied on by

the informant in prior seizures, we fail to see how this detracts from his "invariably accurate" experience in using his sense of smell.

**214**

termine the affiant's intent, *Morissette v. United States*, 342 U.S. 246, 276, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *cf. United States v. Miley*, 513 F.2d 1191, 1201 (2d Cir. 1975), we agree that the most that can be said, as Judge Pierce found, is that the agent made the statement "negligently." [5] 382 F.Supp. at 556. Dunbar had mentioned the weight of the footlocker and the suitcase to Agent McCravy, although he had not stated that the weight was unusual. The weights were referred to in the affidavit by Agent Sweikert as 50 pounds for the suitcase and 35 pounds for the footlocker, which is not claimed to be incorrect; the size of neither is set forth so that the "disproportionate" language is purely conclusory. Very likely the affiant-agent in New York or the agent in California who relayed the information to him had in mind past experience and the fact that disproportionate weight to size is an "indicator" (although obviously an unreliable one) in this type of case. There was, moreover, ample ground for issuing the search warrant without consideration of the statement regarding disproportionate weight. *United States v. La Vecchia*, 513 F.2d 1210, 1215 (2d Cir. 1975).

 There are other inaccuracies in the affidavit—Dunbar had proved reliable in 25 or 30 cases rather than the "approximately 40" mentioned in Sweikert's affidavit, note 1 *supra,* and while the affidavit referred to detecting marijuana "under similar circumstances" there was no showing that the previous cases involved the use of plastic wrappings for the bricks in conjunction with the use of talcum powder to cover the smell as here. But these are trifles; we do not read supporting affidavits with the same microscopic intensity as municipal bond counsel would a bond indenture. Nor do we think that those other discrepancies demonstrate that the affidavit was deliberately false. Dealing by telephone as these agents had to be per-

force of circumstances, one cannot always obtain and convey information with the utmost precision.

Affirmed.

**5.** *See United States v. Miley*, 513 F.2d 1191, 1201 (2d Cir. 1975); *United States v. Faruolo*, 506 F.2d 490, 493 (2d Cir. 1974); *United States v. Fernandez*, 456 F.2d 638, 640 (2d Cir. 1972).