Reversed and Remanded and Plurality and Dissenting Opinions filed June
19, 2003
















Reversed and
Remanded and Plurality and Dissenting Opinions filed June 19, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00944-CR

____________

 

XAVIER HERNANDEZ BAROCIO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

____________________________________________________

 

On Appeal from
the County Criminal Court at Law No. 11

Harris County, Texas

Trial Court
Cause No. 1050094

 

____________________________________________________

 

D I S S E N
T I N G   O P I N I O N

            Though the plurality labors mightily
to force this case into the Johnson/Steelman
framework, those cases stand for the proposition that the odor of illegal
narcotics, standing alone, does not
constitute probable cause to conduct a warrantless search.  Here, the plurality refuses to consider the
odor of contraband in conjunction with
other factors tending to establish probable cause.  Because here the odor of illegal narcotics
does not stand alone, and all the evidence taken together constitutes probable
cause and exigent circumstances sufficient to justify the warrantless entry, I
would affirm the decision of the trial court.[1]  Accordingly, I respectfully dissent.[2]

I.  Analysis

            In support of its holding, the
plurality places significant reliance on the Court of Criminal Appeals’ recent
decision in State v. Steelman, in
which the court stated that “the odor of marijuana, standing alone, does not
authorize a warrantless search and seizure in a home.” 93 S.W.3d 102, 108 (Tex.
Crim. App. 2002); see also Dickey v.
State, 96 S.W.3d 610, 613 (Tex. App.—Houston [1st
Dist.] 2002, no pet.).  In Steelman, the court was called upon to
decide whether the odor of burnt marijuana emanating from a residence
accompanied by an anonymous tip constituted probable cause to believe that “the
person who opened the door of the residence had committed an offense in the
officers’ presence and thus permitted the officers to enter and arrest everyone
inside the home.”  93 S.W.3d at 103–04.  In that case, after receiving an anonymous
tip that drug dealing was taking place, the Abilene Police Department sent
three officers to Ian Steelman’s residence to investigate.  Id. at
104.  At the scene, officers peered
through a window and observed four men sitting together in the living room of
the residence.  Id.  They did not observe any criminal
behavior.  Id.  The officers then knocked on the front door,
whereupon Ian “opened the door, stepped outside, and closed the door behind
him.”  Id.  When the door was opened, the officers
immediately detected the smell of burnt marijuana.  Id.  Responding to the officers’ request for
identification, Ian told them he would have to return inside to retrieve
it.  Id.  At that point, he “opened the door, walked
back through it, and attempted to close it behind him.”  Id.  The officers prevented Ian from closing the
door, entered the home, and arrested all of the occupants.  Id.            The
trial court, after noting some of the officers’ testimony to be “incredible,”
granted the defendant’s motion to suppress. 
Id. at 111
(Cochran, J., concurring).[3]  Agreeing with both the trial court and the
Eastland Court of Appeals, a majority[4] of the
Court of Criminal Appeals found that any evidence resulting from unlawful
police conduct should have been suppressed. 
Id. at
110.  The court held that “the mere odor
of burning marijuana did not give the officers probable cause to believe Ian
had committed the offense of possession of marijuana in their presence.”  Id. at
108.  In coming to its conclusion, the Steelman majority relied on Johnson v. United States, in which the
Supreme Court held that an untested and uncorroborated tip, coupled with the
odor of burning narcotics, did not alone permit officers to enter and search a
private residence without a warrant.  333
U.S. 10, 12–15
(1948);[5] see also Chapman v. United States, 365 U.S. 610,
613–15 (1961); Pineda v. City of Houston,
124 F. Supp. 2d 1057, 1073 (S.D. Tex. 2000). 
Like Steelman, the Johnson court confronted “whether it was
lawful, without a warrant of any kind, to arrest petitioner and to search her
living quarters.”  Johnson, 333 U.S. at 11.[6]

            In Johnson, the authorities learned from an informant that individuals
were smoking opium in a hotel room.  Id. at
12.  Upon arriving at the scene, officers
recognized the “distinctive and unmistakable” odor of burning opium.  Id.  The officers knocked on the door, and after a
delay and some “shuffling” noises, they demanded entrance.  Id. at 13.[7]  Finding the subsequent search illegal, the
Court noted that the officers should have first obtained a warrant from a
neutral and detached magistrate.  Id. at
13–14.  The Court also noted that the
issuance of a search warrant might be justified “[i]f the presence of odors is
testified to before a magistrate and he finds the affiant qualified to know the
odor, and it is one sufficiently distinctive to identify a forbidden
substance.”  Id. at
13.  Finding Johnson persuasive, the Steelman
court affirmed the trial court’s granting of the motion to suppress.

            The trial court in this case did not
have the benefit of the Court of Criminal Appeals’ opinion in  Steelman,
as it was released well after the hearing on the motion to suppress and indeed,
after the case was submitted to this court. 
In his brief, appellant invokes the Eastland court’s opinion in Steelman, and at the hearing on the
motion to suppress, he invoked Johnson,
saying it “squarely decided this issue.” 
However, as discussed below, both Johnson


class=Section2> 

and
Steelman are factually
distinguishable.  Here, because the odor
of marijuana did not stand alone, but was accompanied by other suspicious facts
providing both probable cause and exigent circumstances, I would find the
warrantless entry constitutionally permissible.

II.  Probable Cause

            This court has observed that an
unauthorized entry into a person’s home is the chief evil against which the
wording of the Fourth Amendment is directed. 
Stewart v. State, 681 S.W.2d
774, 779 (Tex. App.—Houston [14th Dist.] 1984, pet. ref’d).  Because the Fourth Amendment primarily
protects a person’s privacy interest in his home, warrantless entries by police
are presumptively unreasonable.  Welsh v. Wisconsin, 466 U.S. 740, 749
(1984).  Indeed, warrantless searches
inside a home are “per se unreasonable” unless they fall into one of a few
specifically established exceptions to the general rule.  Pineda,
124 F. Supp. 2d at 1069.

            This does not mean that the Fourth
Amendment requires police officers “to simply shrug [their] shoulders and allow
a crime to occur or a criminal to escape.” 
Adams v. Williams, 407 U.S. 143, 145
(1972).  To show that a warrantless entry
is constitutional, the State must demonstrate probable cause existed at the
time the search was made and that exigent circumstances existed which made the
procurement of a warrant impractical.  See McNairy v. State, 835 S.W.2d 101,
106 (Tex. Crim. App. 1991); see also
Payton v. New York, 445 U.S. 573, 589
(1980).  The Texas Court of Criminal Appeals
has expressed the probable cause standard as follows: 

[P]robable cause is the sum total of layers of information and the
synthesis of what the police have heard, what they know, and what they observe
as trained officers.  We weigh not
individual layers but the laminated total. 
In dealing with probable cause, . . . as the very name implies, we are
dealing with probabilities.  These are
not technical; they are the factual and practical considerations of everyday
life on which reasonable and prudent men, not legal technicians, act. 

 

Woodward v. State, 668 S.W.2d 337,
345 (Tex. Crim. App. 1982)
(quoting Smith v. United States, 358 F.2d
833, 835 (D.C. Cir. 1966) and Brinegar v.
United
 States, 338 U.S. 160, 176 (1948))
(quotations and citations omitted).

            Probable cause is gauged by the
objective facts known to the officer at the time of the search. See Rosalez v. State, 875 S.W.2d 705,
719 (Tex. App.—Dallas 1993, pet. ref’d). 
In determining whether probable cause existed at the time of a
warrantless entry, we must consider the “sum total of the information
available” to the law enforcement officers, including reasonable inferences
that could be drawn from that information and any experience in similar
operations.  McNairy, 835 S.W.2d at 106.  The officer’s subjective reasoning for the
search or seizure is not determinate of the outcome. See State v. Steelman, 16 S.W.3d 483, 488 (Tex. App.—Eastland
2000), aff’d, 93 S.W.3d 102 (Tex.
Crim. App. 2002). 

A.  Odor of Marijuana

            In the case at bar, both officers
detected the odor of marijuana.  Deputy
Kirsch testified he immediately smelled the “strong odor” of marijuana.  Deputy Wyatt testified he smelled the
marijuana before the door opened, stating:

It’s not necessarily what I observed so much as what I smelt.  [W]hile outside you could smell some
marijuana but when the defendant opened the door you could smell more marijuana
from emitting from inside the house.

 

Although
appellant testified he immediately shut the door upon stepping onto the porch,
both deputies testified that the door remained open.

            Though its presence alone does not
rob a citizen of the constitutional protection against an unreasonable search,
law enforcement officers “may rely on a distinctive odor as a physical fact
indicative of possible crime.”  See Taylor v. United States, 286 U.S. 1, 6
(1932).  Through the sense of smell,
individuals “draw factual conclusions about [their] surroundings.”  State
v. Moore, 734 N.E.2d 804, 808 (Ohio 2000); see also United States v. Kaplan, 89 F.2d 869, 870 (2d Cir. 1937)
(“[s]mell is indeed a sense like any other, and . . . it remains one of the
means by which we apprehend the outside world.”).  Certainly, a law enforcement officer’s use of
his sense of smell is no less reliable and indeed, can sometimes be more
reliable than the other senses.  See United
States v. Borkowski, 268 F. 408, 412 (S.D. Ohio 1920) (“Sight is but one of
the senses, and an officer may be so trained that the sense of smell is as
unerring as the sense of sight.”);  People v. Bock Leung Chew, 298 P.2d 118,
119 (Cal. Dist. Ct. App. 1956) (finding “no logical distinction . . . between
something apparent to the sense of smell, and the same thing apparent to the
sense of sight or to the sense of hearing.”).

            In the identification of contraband,
the sense of smell can be vital to trained investigators.  See
Seldon v. State, No. 597, 2003 WL 21230677, *5 (Md. Ct. Spec. App. May 29,
2003) (“Knowledge gained from the sense of smell alone may be of such character
as to give rise to probable cause for a belief that a crime is being committed
in the presence of an officer.”).  Here,
the sense of smell is of particular import because marijuana produces a
remarkably unique odor.  See United States v. Pond, 523 F.2d 210,
213 (2d Cir. 1975) (“It cannot be disputed that marijuana has a distinctive
pungent odor.”); Mendez v. People,
986 P.2d 275, 281 (Colo. 1999) (emphasizing that “the smell of burning
marijuana is sufficiently distinctive as to be readily identifiable to a
trained police officer”); State v.
Secrist, 589 N.W.2d 387, 391 (Wis. 1999) (noting that marijuana produces an
“unmistakable” odor)  Significantly,
shortly after Steelman, the Court of
Criminal Appeals noted that “[w]hile smelling the odor of marijuana smoke may
not be an event normally encountered in daily life, it requires limited, if
any, expertise to identify.”  Osbourn v. State, 92 S.W.3d 531, 537 (Tex. Crim. App.
2002).

            The law certainly does not require
an officer to ignore an odor that clearly suggests the commission of a
crime.  See United States v. Kronenberg, 134 F.2d 483, 483 (2d Cir. 1943)
(finding that “it would be absurd to hold, that the sense of smell was not to
be relied upon at all”); Commonwealth v.
Stoner, 344 A.2d 633, 635 (Pa. Super. Ct. 1975)
(noting that 

class=Section3> 

it
would have been a “dereliction of duty for [an officer] to ignore the obvious
aroma of an illegal drug which he was trained to identify.”).  The smell of marijuana creates an inference
of both its immediate presence and its recent use.  See State v. Judge, 645 A.2d 1224, 1228 (N.J. Super.
Ct. App. Div. 1994).  Thus, it prompts a
reasonable belief that a controlled substance has been or is being possessed or
delivered, or both, and, consequently, that a violation of law has occurred or
is occurring.  Brunson v. State, 940 S.W.2d 440, 441–42 (Ark. 1997).

            In Steelman, the Texas Court of Criminal Appeals did not hold that the
plainly apparent odor of illegal contraband is a nullity to be disregarded by
officers standing at the threshold of a private residence.  The court simply held that the odor of burnt
marijuana, coupled with an anonymous tip of drug dealing, did not give officers
probable cause to believe that the person who opened the door had committed an
offense in the officers’ presence, thereby permitting them to enter and arrest
everyone in the residence.  See Steelman, 93 S.W.3d at 103–04.  Taken into consideration with other facts and
circumstances, the odor of marijuana may be considered by officers and the
courts in a probable cause analysis.[8]  Indeed, the odor of an illegal substance may
provide an element of probable cause
for a search.  Chavez v. State, 769 S.W.2d 284, 287–88 (Tex. App.—Houston [1st
Dist.] 1989, pet. ref’d).  Although the odor standing alone does not
provide officers with probable cause or exigent circumstances to justify a
warrantless entry, the plain smell of marijuana certainly provides officers
with probable cause to believe contraband or evidence of illegality may be found.  State
v. South, 885 P.2d 795, 798–99 (Utah Ct. App. 1994), rev’d on other grounds, 924 P.2d 354 (Utah 1996); State v. Decker, 580 P.2d 333, 336
(Ariz. 1978) (“The odor of burned marijuana was sufficient to provide probable
cause to believe that an occupant of the room was smoking marijuana.”);  see
also Cameron v. State, CR-01-1845, 2003 WL 569713, at *4 (Ala. Crim. App.
Feb. 28, 2003) (holding that “the strong and overwhelming smell of marijuana
emanating from the house, combined with [officer’s] testimony regarding his
ability to identify the distinctive odor of marijuana, established the
existence of [officer’s] probable cause to believe that contraband was present
inside the residence”).  Here, the odor
of illegal contraband does not in and of itself provide officers with probable
cause, however, it is certainly an element of the analysis.

B.  Suspicious Circumstances

            Kirsch and Wyatt accumulated more
evidence than that which was detected through their sense of smell.  See
Kaplan, 89 F.2d at 870.[9]  According to Kirsch’s testimony, they were in
appellant’s subdivision on “an unrelated burglary investigation” when they
“observed a suspicious vehicle.”  Kirsch
described the scene as follows:

The vehicle was parked illegally facing the wrong way on the roadway.  The front door or the driver’s side door was
standing wide open. [We] [a]pproached the vehicle and observed the ignition
keys were still inside the ignition.

 

            Together, the deputies approached
the nearest residence — appellant’s home. 
There, they observed both a surveillance camera trained upon the
entrance way as well as “pry marks on the door near the locking
mechanism.”  Suspicious of possible
criminal activity, the deputies knocked on the door, and for several minutes,
there was no response.  Wyatt testified
he “heard a lot of noise in the residence.” 
When the door finally opened, appellant emerged, whereupon he refused to
present identification after repeated requests. 
Appellant ultimately indicated that his identification was inside the
home.  Kirsch then directed appellant to
enter the home.  He testified that he was
still investigating a possible burglary, and accordingly, followed appellant
into the home.

            Here, the probable cause analysis is
controlled by the Court of Criminal Appeals’ decision in McNairy, which the plurality does not see fit to analyze in any
significant detail.  835 S.W.2d at
106.  In that case, the authorities made
a warrantless entry into the defendant’s trailer home after detecting the odor
of a methamphetamine laboratory and hearing
people running out the back door of the trailer.  Id. at
103.  In challenging the
constitutionality of the search, the appellant asserted that odor alone could
not justify such a warrantless search.  Id. at
105.  In 
finding probable cause existed at the time of the warrantless entry, the
Court of Criminal Appeals examined a host of suspicious factors, including, but
not limited to:

(1) the “unmistakable” odor of a methamphetamine laboratory emanating
from appellant’s trailer home; (2) the sound of the back door of the trailer
flying open and persons running through the brush into a nearby wooded area;
and (3) the presence of another methamphetamine laboratory on the same ten acre
tract.

 

Id. at
106.  The court also looked to the
officers’ specific training and familiarity with previous methamphetamine
laboratory raids.  Id.  Thus, the odor of narcotics, coupled with
other facts and circumstances tending to provide probable cause, were
sufficient to justify the warrantless entry. 
Id.

            Here, Deputies Kirsch and Wyatt
encountered suspicious circumstances separate and apart from the unmistakable
odor of marijuana, including the unattended vehicle facing the wrong direction
with the keys still in the ignition and door ajar, the pry marks on the locking
mechanism of the front door, the investigation of another burglary in the
subdivision, and a suspect who repeatedly refused requests to provide
information.  In addition, Kirsch
testified that in his experience it “wouldn’t be too unusual” for burglars to
smoke marijuana while in the house they were burglarizing.  Taking these facts and circumstances
together, the officers had sufficient probable cause at the time of the initial
entry into appellant’s home.

III.  Exigency

            If probable cause is present, the
inquiry becomes whether exigent circumstances existed to obviate the need for a
search warrant and justify the initial warrantless entry into appellant’s
home.  Id. at
107.  The United States Supreme Court has
observed:

[N]o amount of probable cause can justify a warrantless search or
seizure absent ‘exigent circumstances.’ 
Incontrovertible testimony of the senses that an incriminating object is
on premises belonging to a criminal suspect may establish the fullest possible
measure of probable cause.  But even
where the object is contraband, this Court has repeatedly stated and enforced
the basic rule that the police may not enter and make a warrantless seizure.

 

Coolidge v. New Hampshire, 403 U.S. 443, 468
(1971), overruled in part on other grounds, Horton v. California, 496 U.S. 128,
136–41 (1990).

            Thus, probable cause must be
supported by exigent circumstances to justify the warrantless entry.  The Texas Court of Criminal Appeals
recognizes two exigent circumstances where an immediate search without a
warrant is permissible: (1) where there is a threat to someone’s health or
safety, (no warrant necessary when police action is to protect or preserve
life); and (2) where police reasonably conclude that evidence would be
destroyed before they could obtain a search warrant.  McNairy,
835 S.W.2d at 107;  Torrez v. State, 34 S.W.3d 10, 15 (Tex.
App.—Houston [14th
Dist.] 2000, pet. ref’d).  In determining
whether exigent circumstances exist, the appellate court does not look solely
at the subjective reasoning of the officer, but uses an objective standard of
reasonableness.  Torrez, 34 S.W.3d at 15. 

A.  Possible Burglary

            Kirsch testified that he was
investigating a possible burglary of appellant’s home when he made the
warrantless entry.  The possibility that
a burglary is in progress or has recently been committed may provide officers
with exigent circumstances to justify a warrantless entry.  Brimage
v. State, 918 S.W.2d 466, 501 (Tex. Crim. App. 1994) (citing United States v. Johnson, 9 F.3d 506, 509–10 (6th Cir.
1993)); see also In re J.D., 68
S.W.3d 775, 780 (Tex. App.—San Antonio 2001, pet. denied);  Medina v. State, No.
04-98-00696-CR, 1999 WL 1020266, at *4, (Tex. App.—San Antonio Nov. 10, 1999,
no pet.) (not designated for publication).[10]  Because suspects or victims may still be in
the residence, and because there is an immediate and urgent need to protect the
resident and his property, the warrantless police entry may be justified as
exigent depending upon the specific circumstances of the case.  For example, police may properly enter to
look for other perpetrators or victims. 
Indeed, as one federal court has observed, it would “defy reason” to
force officers to leave the scene of a possible burglary-in-progress to obtain
a warrant thereby “leaving the putative burglars free to complete their crime
unmolested.”  United States v. Singer, 687 F.2d 1135, 1144 (8th Cir.
1982).

            Among the facts tending to
illustrate a possible burglary at appellant’s home was the suspicious
vehicle.  See Reardon v. Wroan, 811 F.2d 1025, 1030 (7th Cir. 1987) (noting
that exigent circumstances existed when, among other factors, officers found
single car in the driveway of fraternity house at a time of year when the
students were on break and burglaries were known to occur more
frequently).  The pry marks on the
locking mechanism of the door also suggested that a burglary might be in
progress.  See United States v. Estese, 479 F.2d 1273, 1274 (6th Cir. 1973)
(finding exigent circumstances to justify warrantless entry where “pry marks on
the door” were observed and the door ajar); see
also United States v. Valles-Valencia, 811 F.2d 1232, 1235–36 (9th Cir.
1987) (finding probable cause to conduct warrantless entry to investigate
possible burglary where, among other factors, officers detected odor of
marijuana and observed that window screen pried open), amended on other grounds, 823 F.2d 381 (9th Cir. 1987); United States v. Dart, 747 F.2d 263, 267
(4th Cir. 1984).  The officers were also
confronted with an individual who repeatedly refused requests for
identification.  See Johnson, 9 F.3d at 509–10. 
Furthermore, Kirsch testified that at the time of the warrantless entry
into the home, he was still investigating a possible burglary and in his
experience as a police officer, burglars sometime smoked marijuana while
committing a burglary.  

            Also, accompanying a burglary in
progress is the possibility of additional perpetrators or resident
victims.  The plurality notes that the
officers had not articulated “facts reasonably showing other persons were in
Barocio’s home” and summarily concludes that “[c]oupling odor and burglary
suspicions, when the sole suspect has been detained, is simply a red herring.”[11]  However, the deputies had no confirmed belief
that appellant was the “sole suspect,” and thus, it was “appropriate for them
to act on the basis of the kinds of risks burglaries normally present.”  In re
Sealed Case 96-3167, 153 F.3d 759, 767 (D.C. Cir. 1998).[12]  Importantly, any failure of the officers to
testify to concerns of resident safety or other possible suspects cannot
dictate the plurality’s holding, as we look to objective standards of
reasonableness and not the subjective reasoning of an officer in an analysis of
exigent circumstances.  Objectively, a
reasonable officer would have been aware of the danger and the need to
immediately go into the house to eliminate the possibility of other suspects
and ensure that no residents were in jeopardy. 
Cf. Colburn v. State, 966
S.W.2d 511, 519 (Tex. Crim. App. 1998) (noting that courts employ “an objective
standard of reasonableness in determining whether a warrantless search is
justified, taking into account the facts and circumstances known to the police
at the time of the search”).

            Balancing the interests of the
people to be free from unjustified governmental intrusion against society’s
need to have law enforcement protect citizens from predators, I would find that
the evidence of a possible burglary in progress provided officers with exigent
circumstances to conduct a warrantless entry. 
See United States v. Erickson,
991 F.2d 529, 533 (9th Cir.1993) (“In a wide variety of contexts, this and
other circuits have upheld 

class=Section4> 

warrantless
searches conducted during burglary investigations under the rubric of exigent
circumstances.”); see also People v.
Duncan, 720 P.2d 2, 5–6 (Cal. 1986).

B.  Destruction of Evidence

            In addition to the exigency supplied
by the officers’ belief of a possible burglary, the likelihood of the
destruction of evidence in this case also provided officers with exigent
circumstances.  The need to invoke the
exigent circumstances exception to the warrant requirement is particularly
compelling in narcotics cases because narcotics can be so quickly destroyed.  See
United States v. Santa, 236 F.3d 662, 669 (11th Cir. 2000); Moore, 734 N.E.2d at 809 (“Because
marijuana and other narcotics are easily and quickly hidden or destroyed, a
warrantless search [of vehicle] may be justified to preserve evidence.”).  To avail itself of this exception, the State must
show the police could have reasonably concluded that evidence would be
destroyed or removed before they could obtain a search warrant.  McNairy,
835 S.W.2d at 107; see also United States
v. Villabona-Garnica, 63 F.3d 1051, 1056 (11th Cir. 1995); Williams v. State, 937 S.W.2d 23, 29–30
(Tex. App.—Houston [1st Dist.] 1996, pet. ref’d) (en banc) (Mirabal, J.,
concurring).  Factors bearing upon the
reasonableness of a warrantless entry premised upon this exception are:

(1) the degree of urgency involved and the amount of time necessary to
obtain a warrant; (2) the reasonable belief that the contraband is about to be
removed; (3) the possibility of danger to police officers guarding the site of
the contraband while a warrant is sought; (4) information indicating the
possessors of the contraband are aware the police are “on their trail”; and (5)
the ready destructibility of the contraband and the knowledge that efforts to
dispose of narcotics and to escape are characteristic behavior of persons
engaged in narcotics trafficking.

 

Covarrubia v. State, 902
S.W.2d 549, 554 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d).

            In the instant case, Kirsch
testified that “it became evident that there was marijuana recently smoked
inside the residence.”  An odor of marijuana
may indicate that evidence of a crime is in the process of being burned and
thereby destroyed.  See Mendez, 986 P.2d at 

class=Section5> 

282;
 Decker, 580 P.2d at 336 (“The smell in
this case alone indicated the contraband was being destroyed.”); Vaillancourt v. Superior Court for Placer
County, 78 Cal. Rptr. 615, 619 (Cal. Ct. App. 1969) (noting that the odor
of burning marijuana “would also indicate that the evidence was in fact
disappearing” suggesting the “imminent destruction of the contraband.”).

            The mere presence of contraband,
however, does not give rise to exigent circumstances.  United
States v. Rivera, 825 F.2d 152, 156–57 (7th Cir. 1987); cf. Price v. State, 93 S.W.3d 358, 368
(Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d).[13]  Nevertheless, while the odor of contraband
standing alone might not provide officers with exigent circumstances, the smell
of marijuana coupled with appellant’s knowledge of the officers’ presence
creates the sufficient exigency under the specific facts of this case.  When appellant emerged from his home, he
became aware of the presence of police. 
He knew, or could reasonably suspect, that the officers had detected the
odor of illegal and easily destroyable contraband.  See
Haggard v. Commonwealth, No. 2002-CA-000334-MR, 2003 WL 1948881, at *1 (Ky.
Ct. App. Apr. 25, 2003) (not designated for publication) (finding exigent
circumstances justified officer’s warrantless entry of residence under
destruction of evidence exception when occupants were aware of officer’s
presence and knew he suspected drug activity). 
At that point, had the officers left to obtain a warrant to search the
home, appellant might have anticipated their return and acted quickly to
dispose of any incriminating evidence.[14]  Under the facts of this case, an officer
could reasonably conclude that a suspect would attempt to dispose of the
evidence before the police could return with a warrant.  See United States v. Grissett, 925 F.2d 776, 778 (4th Cir. 1991). 
Appellant’s awareness of the authorities, coupled with the ease with
which small amounts of narcotics can be destroyed, establishes the exigency
necessary to predicate a warrantless entry. 
People v. Baker, 813 P.2d 331,
333–34 (Colo. 1991) (noting that defendant’s awareness of the officers’
detection of the odor of marijuana should be considered in exigency analysis); see also United States v. Tobin, 923
F.2d 1506, 1511 (11th Cir. 1991) (finding exigent circumstances where the
officers could reasonably conclude from defendant’s behavior that they were
“either aware or afraid that someone was watching them [and] [d]estruction or
removal of . . . the narcotics was therefore a possibility”).

Conclusion

            Because I find that both probable
cause and exigent circumstances justify the warrantless entry in this case, I
respectfully dissent.

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Plurality and Dissenting Opinions filed June 19, 2003.

Panel consists of Justices Edelman, Seymore, and
Guzman.  (Edelman, J. concurs in result
only.  Guzman, J. dissenting.)

 

Publish — Tex.
R. App. P. 47.2(b).

 

 

 











            [1]  At the hearing on the motion to suppress, the
State agreed to stipulate with defense counsel that “the basis for the issuance
of the warrant [was] a previous warrantless entry.”  For purposes of this appeal, I find it
unnecessary to deal with the issuance of the subsequent search warrant, as the
deputies’ warrantless entry was either constitutionally permissible or
impermissible the instant it was made.  Stewart v. State, 681 S.W.2d 774,
776–77(Tex. App.—Houston [14th Dist.] 1984, pet. ref’d); see also Janicek v. State, 634 S.W.2d 687, 691 (Tex. Crim. App.
1982).  The subsequent issuance of a
search warrant cannot justify a previous unjustifiable act and make evidence
admissible that is otherwise inadmissible. 
Stewart, 681 S.W.2d at 777.





            [2]  The plurality suggests that to find Steelman
factually distinguishable is to bestow upon law enforcement authorities
unbridled discretion to enter people’s homes without a warrant.  However, this dissent recognizes the error of
misapplying or expanding Steelman beyond
the proposition that the odor of marijuana standing
alone does not justify a warrantless entry into the home.  To proclaim that Steelman controls our inquiry is to plainly and steadfastly ignore
the clear factual differences between the two warrantless entries.  Simply put, the Steelman court dealt with the smell of illegal contraband and
little else, while in the case at bar, we are confronted with a myriad of
circumstances which were neither contemplated nor addressed by the Court of
Criminal Appeals in Steelman.





            [3]  The plurality recites the rule that great
deference is given to the trial court’s determinations in a ruling on a
defendant’s motion to suppress.  It does
not consider however, the distinction the rule creates between Steelman and the instant case.  In Steelman,
the trial court granted the defendant’s motion to suppress, basing its ruling
partly on its disbelief of the officer’s testimony.  See
Steelman, 93 S.W.3d at 111 (Cochran, J., concurring).  Here, the trial court denied appellant’s
motion to suppress and to that ruling we must give the appropriate
deference.  The plurality disregards the
trial court’s discretion by simply noting that even if the entirety of the
officers’ testimony is believed, the showing would still be insufficient to
justify a warrantless entry in the case at bar.





            [4]  The majority opinion in Steelman drew two concurring opinions and three dissenting
opinions.  93 S.W.3d at 109-24.  Five justices supported the majority opinion
and one justice concurred in the result only.
 Id. at 103.  Justice Keasler, joined by Justice Hervey,
dissented upon the court’s denial of the State’s motion for rehearing.  See
State v. Steelman, Nos. 1022-00, 1023-00, 2003 WL 190820, at *1 (Tex. Crim. App. Jan. 29, 2003) (Keasler, J., dissenting on denial of rehearing).





            [5]  Steelman
concerned a warrantless arrest while Johnson
dealt with warrantless searches.  See Steelman, 93 S.W.3d at 108 n.9;  see
also Johnson, 333 U.S. at 12–15.  However, the Steelman majority noted the similarity between the two scenarios as
“the actual arrest of Steelman took place after the warrantless entry into the
residence, which can be thought of as a warrantless search for the person to be
arrested.”  Id.

 





            [6]  The plurality relies heavily on Johnson but does not mention that it was
decades before much of the U.S. Supreme Court’s modern refinements of its
Fourth Amendment jurisprudence, including many significant cases dealing with
the exclusionary rule and exigent circumstances.  See
Stone v. Powell, 428 U.S. 465, 482 (1976); Chimel v. California, 395 U.S. 752, 774 (1969);  Mapp v.
Ohio, 367 U.S. 643, 656 (1961). 





            [7]  Notably, the Court observed that entry by the
authorities “was granted in submission to authority rather than as an
understanding and intentional waiver of a constitutional right.”  Johnson,
333 U.S. at 13.





            [8]  The plurality dedicates little meaningful discussion
to the additional evidence in this case, as noted in the following section.





            [9]  Observing that the tip was “never
substantiated,” the Steelman majority
noted that “a mere anonymous tip, standing alone, does not constitute probable
cause.”  93 S.W.3d at 108;  Johnston v. State, 99 S.W.3d 269, 272 (Tex. App.—Texarkana 2003, no
pet.).  Unlike the officers in Steelman, Deputies Kirsch and Wyatt were
not responding to an anonymous tip. 





            [10]  For an exhaustive survey of the jurisprudence
on the issue of the possibility of a burglary in progress providing exigent
circumstances to justify a warrantless entry into a residence, see generally  Suzanne V. Estrella, Annotation, Belief that Burglary is in Progress or has
Recently Been Committed as Exigent Circumstance Justifying Warrantless Search
of Premises, 64 A.L.R.5th 637 (1998).





            [11]  By focusing on the notion that Barocio was
“the sole suspect” (a fact confirmed only after the entry at issue), the
plurality, perhaps inadvertently, distinguishes Steelman.  In that case, the
court based its holding partially on the fact that the officers, before
knocking, saw through a window, four individuals sitting in the residence,
although at that time, the officers did not witness any illegal behavior.  Steelman,
93 S.W.3d at 104.  When the officers
detected the odor of contraband, they had no idea which individual was engaging
in unlawful behavior, as there were multiple persons in the residence.  See id.
at 109.  When Ian Steelman emerged from
the home, the officers “certainly had no particular reason to believe that [he]
was smoking or possessing marijuana.”  Id. 
Here, the officers encountered only one individual at the residence when
they detected the odor of marijuana and suspected a possible burglary.





            [12]  After the fact, however, the plurality has
the benefit of the later-acquired knowledge that the residence contained no
additional perpetrators or victims in the home.   At the time of the warrantless entry, the
deputies had no such luxury.  





            [13]  This court recently discussed the destruction
of evidence exception in Price v. State,
93 S.W.3d 358 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  In that case, we held that “[t]o avail
themselves of this exception to the knock-and-announce rule, officers must
reasonably conclude that the resident has resolved to dispose of the evidence
in the event of police intrusion.”  Id. at 368.  In criticizing the State’s reliance on the
exception in that case, we noted that the “police did not see appellant engaged
in the act of destroying evidence, nor had they witnessed any specific acts
suggesting that destruction was imminent.” 
Id.  Indeed, the officers in Price only suspected that the defendant possessed narcotics on the
day of the entry.  Id.  Here, however, the odor gave police certain
knowledge that marijuana was on the premises. 
Also, though it features a discussion of the destruction of evidence
exception, Price remains factually
and contextually distinguishable from the case at bar as the officers were executing
a search warrant and the issue was whether their failure to knock and announce
their presence was constitutionally impermissible.





            [14]  The officers’ detection of the odor of
contraband may support the finding of probable cause for the purposes of the
issuance a search warrant.  Johnson, 333 U.S. at 13;  Pineda,
124 F. Supp. 2d at 1073.